IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| AARON THOMPSON, § | | |
| TDCJ-CID NO. 872772, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. V-01-01 | |
| § | | |
| WAYNE SCOTT, et al., § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER**

Texas prison inmate Aaron Thompson filed a civil rights complaint alleging that officials of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID) interfered with his right to practice his religion in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) of 2000. The defendants have filed a motion for summary judgment (Docket Entry No. 48) supported by records and sworn statements. Thompson has filed a response addressing the arguments raised in the defendants' motion. After reviewing the pleadings and evidence, the court will deny the motion for the reasons set forth below.

**I. Procedural History and Remaining Claim**

Thompson, who is now assigned to the TDCJ-CID Neal Unit near Amarillo, Texas, originally filed a civil action in state court in Dewitt County, Texas. At that time he was assigned to the TDCJ-CID Stevenson Unit located in that same county which is near Victoria, Texas. Thompson sought injunctive relief in part because he claimed that he had been denied the right to follow the religious practices of his Cherokee-Blackfoot heritage. The case was removed to federal

court because Thompson's complaint asserted that the defendants violated his rights guaranteed by the First Amendment and raised federal issues. Among his claims, Thompson alleged that he was forced to cut his hair contrary to his beliefs as a Native American adherent and that certain religious items were confiscated. He also asserted that he was not allowed to participate in a Native American ceremony .

The defendants filed a motion for summary judgment contending that no violations had occurred. This court granted the defendants' motion for summary judgment. The United States Court of Appeals for the Fifth Circuit affirmed the decision dismissing all claims except those regarding Thompson's hair length. *See* Docket Entry No. 23. Noting that TDCJ-CID's grooming policy had been previously upheld, the Fifth Circuit remanded the action so that this court could make a finding concerning Thompson's allegation that he had been forced to cut his hair shorter than the length required by TDCJ-CID. *Id.* at 3-4. Specifically, Thompson maintained that the Stevenson Unit had a special policy which required inmates to keep their hair no more than one-eighth of an inch long. *Id.* at 4.

Pursuant to the Fifth Circuit's directive, this court ordered the defendants to file a motion for summary judgment or other appropriate dispositive motion addressing Thompson's claim that he was forced to cut his hair in violation of his right to practice his religion. Docket Entry No. 25. The defendants were specifically instructed to set forth the Stevenson Unit hair length policy. Further, if Thompson was forced to cut his hair shorter than the length prescribed by TDCJ-CID regulations, the defendants were required to present whether compelling government interest would be served by Stevenson's special requirement.

The defendants filed a motion challenging constitutionality of RLUIPA because the law was unsettled at that time. This court denied the motion without prejudice and issued a stay because the issue was under consideration by the United States Supreme Court. Docket Entry No. 41. The Supreme Court subsequently upheld RLUIPA's constitutionality. However, in doing so the Court noted that Congress expected that the courts would grant "due deference to the experience and expertise of prison and jail administrators" in their decisions regarding the care and discipline of their charges. *Cutter v. Wilkinson*, 125 S.Ct. 2113, 2119 (2005), *quoting* S.Rep. No. 103-111, p.10 (1993).

The defendants moved for dismissal by arguing that Thompson's request for injunctive relief had been mooted by his transfer from the Stevenson Unit to another TDCJ-CID Unit. Docket Entry No. 44. This court rejected the argument noting that Thompson asserted that he was still being subjected to grooming standards which interfered with his religious beliefs and that he had been disciplined for violating TDCJ-CID grooming standards. Docket Entry No. 47. The court ordered the defendants to submit a motion for summary judgment and present evidence regarding TDCJ-CID's current grooming policy, its general implementation, and its implementation with regard to Thompson. The defendants have complied, and Thompson has filed a response (Docket Entry No. 51) after being granted a time extension to do so.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the Court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows that the nonmovant cannot carry its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Id.*

The court construes the evidence such that the nonmoving party is favored and does not weigh the evidence, assess its probative value, evaluate the credibility of the witnesses, or resolve any factual disputes. *Carboni v. General Motors Corporation*, 278 F.3d 448, 451 (5th Cir. 2002); *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth. *Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002); *Spectators' Communication Network Inc. v. Colonial Country Club*, 253 F.3d 215, 219 (5th Cir. 2001). Factual controversies will be decided in the nonmovant's favor only when both sides have presented evidence showing that there is an actual controversy. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998), *citing Little*, 37 F.3d. at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *Id.*

### III. The Defendants' Arguments and Evidence

The defendants assert that Thompson has failed to present any evidence to support his claim that his rights have been violated. In general, they contend that TDCJ-CID's grooming regulations are valid because they are related to a compelling state interest as explained in *Diaz v. Collins*, 114 F.3d 69, 73 (5th Cir. 1997). They further contend that there is no evidence to support Thompson's allegation that he has been forced to cut his hair shorter than the length required by the prison regulations. The defendants also argue that Thompson cannot show that he is entitled to injunctive relief because he has not filed any grievance regarding the length of his hair since he has been transferred to the Neal Unit on January 26, 2006, even though he was disciplined for a grooming violation as recently as February 2, 2006. The defendants have presented the following evidence in support of their arguments, (Docket Entry No. 48):

Exhibit A:   Affidavit of William H. Jones (Captain at the Neal Unit where Thompson is currently incarcerated) with Attached Documents and Policies:

    Tab 1:   Texas Department of Criminal Justice - Disciplinary Records for Aaron Thompson

    Tab 2:   Texas Department of Criminal Justice - Administrative Directive AD-03.83 (Rev. 5), TDCJ Offenders Who Refuse to Comply with Grooming Standards, August 2005

    Tab 3:   Excerpt from the Texas Department of Criminal Justice - Offender Orientation Handbook

Exhibit B:   Affidavit of TDCJ-CID Director Nathaniel Quarterman

Quarterman's affidavit (Exhibit B)[1] generally illustrates the challenges TDCJ-CID faces in responding to the religious needs of over 150 faith groups in the prison system consisting of over 150,000 inmates in 106 facilities. Quarterman asserts the rationale for grooming standards, noting the need for maintaining as much uniformity as possible as well as limiting the inmates' ability to alter their appearance should they attempt to escape. Exhibit B, at 5-8. These same security concerns have been considered by the Fifth Circuit which found that they were sufficient to establish a compelling state interest. *Diaz v. Collins*, 114 F.3d at 73. While the Court acknowledged that the grooming regulations worked a hardship on the practice of Native American beliefs, which placed great significance on long hair, it found that the regulations were necessary and that there was no feasible lesser alternative available. *Id*. *See also Thunderhorse v. Pierce*, 418 F.Supp.2d 875, 880 (E.D. Tex. 2006); *Gooden v. Crain*, 405 F.Supp.2d 714, 721 (E.D. Tex. 2005). The specific language regarding male hair length and grooming is as follows:

> Male offenders must keep their hair trimmed up the back of their neck and head. Hair must be neatly cut. Hair must be cut around the ears. Sideburns will not extend below the middle of the ears. No block style, afro, natural or shag haircuts will be permitted. No fad or extreme hairstyles/haircuts will be permitted. No mohawks, tails, or designs cut into the hair are allowed.
>
> Exhibit A, Tab 3, at 10. Part III, ¶ A, § 4 of the Texas Department of Criminal Justice - Offender Orientation Handbook.

---

[1] This affidavit was apparently filed in another civil rights action in which a TDCJ-CID inmate complained that prison's regulations, including those regarding hair length, violated his right to practice his Native American religion. *See Thunderhorse v. Pierice*, 418 F.Supp.2d 875, 894-95 (E.D. Tex. 2006). The court held that there was no merit to the inmate's claim. *Id*.

Noting that the TDCJ-CID grooming standards have been upheld by the courts, the defendants contend that Thompson cannot present any evidence demonstrating that this policy has been altered or violated by the defendants.

The defendants assert that Thompson has only been required to cut his hair in conformity with the regulations which do not have a precise standard as to hair length. In support of this assertion, Captain William H. Jones (Exhibit A) states that inmates at the Neal Unit (where Thompson has been assigned since January 26, 2006) are not required to cut their hair shorter than the length required by TDCJ-CID policy. Exhibit A, at 3. TDCJ-CID inmates work as barbers who give haircuts at the request of the inmates receiving the haircuts. *Id*. The barbershops are supervised by TDCJ-CID officers but the officers do not exercise control over the individual haircuts. *Id*. It is generally up to the inmates themselves to determine when they need a haircut. *Id*. A guard will order an inmate to get a haircut only when he observes that the inmate's hair is longer than allowed by TDCJ-CID regulations. *Id*. An inmate may be charged and disciplined if he refuses to comply with the grooming regulation. *Id*.

Captain Jones states that Thompson has been disciplined for failing to cut his hair since he has been transferred to the Neal Unit. Exhibit A, at 4; *see also* Tab 1, at 14. The disciplinary charge was filed on February 2, 2006, and Thompson received 45 days of cell restriction. *Id.* No charges have been made since then, and Thompson has not filed any grievances concerning the grooming policy or hair length since his transfer to the Neal Unit. *Id*.

Captain Jones states that he met with Thompson on April 25, 2006, and noted the length of his hair at that time. *Id.* Jones reports that Thompson's hair was approximately one inch long on the top of his head with the sides and back at approximately one-half inch long. According to Jones,

Thompson's hair length at that time conformed with TDCJ-CID's grooming policy and that he could remain in compliance if he maintained his hair at that length or chose to cut it shorter. *Id.* at 5.

In summary, the defendants argue that Thompson has only been disciplined for refusing to abide by the constitutionally valid regulations. They assert that the disciplinary action taken against Thompson is not proof that he was forced to cut his hair shorter than necessary. They further claim that Thompson cannot establish a claim under the First Amendment or the Religious Land Use because he did not file a grievance concerning his hair length since arriving at the Neal Unit.

### IV. Thompson's Response

In his response, Thompson continues to insist that he has been forced to keep his hair no longer than one-eighth inch. Docket Entry No. 51, at 4. He backs this declaration by referring to disciplinary case No. 20060152973 (Docket Entry No. 51, Exhibit A) in which he was charged with refusing to comply with grooming standards on February 2, 2006, the same disciplinary case referenced by the defendants. *See* Docket Entry No. 48, Exhibit A, at 4; Tab 1, at 14. The specific language of the charge reads as follows:

> ON THE DATE AND TIME LISTED ABOVE [02/02/06; 12:20 PM], AND AT J-1-B WING DAYROOM, OFFENDER THOMPSON, AARON, TDCJ-ID NO. 872772, REFUSED TO COMPLY WITH GROOMING STANDARDS IN THAT SAID OFFENDER REFUSED TO GET A HAIRCUT.

*Id*.

Thompson goes on to contend that he will continue to be disciplined for practicing his religion and reiterates his failed argument that the TDCJ-CID policy regarding long hair substantially burdens his religious practice. Docket Entry No. 51, at 4-5. Thompson also alleges that he had been compelled to maintain his hair at no more than one-eighth of an inch during and

8

after his stay at the Stevenson Unit. Docket Entry No. 51, at 6. He claims that the disciplinary action taken against him at the Neal Unit was due to his hair length being in excess of one-eighth of an inch and that the one-eighth length standard is enforced throughout the TDCJ-CID system. *Id*. at 6-7.

Although there is no reference in the No. 20060152973 disciplinary charge to Thompson having hair in excess of one-eighth of an inch, Thompson contends that his grievances (Docket Entry No. 51, Exhibit C) support his claim. Thompson filed the grievances after he was disciplined. The Step 1 grievance (Exhibit C, at 1-2) makes no reference to a one-eighth length standard. The Step 2 grievance (Exhibit C, at 3-4), which was filed after the Step 1 grievance was rejected, does contain a statement by Thompson as set forth verbatim:

> This unit enforces the shaved head policy, one eight inche [sic] or less sidewall hair length, and I have a federal court orde [sic] in my name from the fifth circuit federal court stating that this policy is not valid. Cause number V-01-01, Order number 03-40408 issued January 4, 2004, in cause styled Thompson, vs. Scott, et all.

Exhibit C, at 3.

The Step 2 grievance was rejected with a finding that the disciplinary charge was appropriate and that the guilty verdict was supported by the evidence. *Id*. at 4.

Thompson challenges Captain Jones's statement with another grievance filed on July 7, 2006. Docket Entry No. 51, Exhibit D. In his Step 1 grievance, Thompson states that an inmate barber cut his hair off the ears and cuff in compliance with TDCJ-CID policy on June 21, 2006. However on the following day a guard observed Thompson's hair "blowing in the wind" from a fan. *Id*. Thompson claims that the guard told him he would have to cut his hair "in a short Christian style." Docket Entry No. 51, Exhibit D, at 1. When Thompson said that he had just had a haircut,

the guard told him it was too long. *Id*. Thompson argued that his hair complied with the rules, but the guard disagreed. When Thompson asked the guard if he wanted him to cut his hair or shave his head, the guard answered that Thompson did not have to shave his head but that he must cut his hair to one-eighth inch or less pursuant to unit policy. Thompson's grievance goes on to state that he was disciplined and that the actions taken against him show that Captain Jones's statement that Thompson is allowed to maintain longer hair (*See* Docket Entry No. 48, Exhibit A) is false. Docket Entry No. 51, Exhibit D, at 2.

The disciplinary action taken against Thompson # 20060303980 was reviewed and upheld. *Id*. In upholding the decision, the reviewer found that Thompson committed an infraction by failing to obey the guard's order to get a haircut. *Id.* Thompson filed an appeal (Docket Entry No. 51, Exhibit D, at 3-4) in which he again asserted that he was forced to cut his hair even though it was off his ears and collar and that the grooming policy at Neal required him to shave his head. The appeal was rejected with a finding that there was nothing to indicate that the staff had made false statements. *Id.* at 4.

## V. **Analysis**

Thompson's claim is based on his right to practice his religion as a Texas prisoner under the RLUIPA. The relevant statutory language is as follows:

(a) General rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

**(1)** is in furtherance of a compelling governmental interest; and

>   **(2)** is the least restrictive means of furthering that compelling governmental interest.
>
>   42 U.S.C. § 2000cc-1

The crux of the complaint at issue is that Thompson has been compelled to cut his hair by TDCJ-CID officials in violation of his Native American religion. Prisoners's religious practices are constitutionally protected but these rights are limited. *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992). In evaluating RLUIPA, the Supreme Court has noted that prison security, as well as the need for order and safety, is a compelling governmental interest which justifies actions which restrict religious practices and that RLUIPA would "be applied in an appropriately balanced way, with particular sensitivity to security concerns." *Cutter v. Wilkinson*, 125 S.Ct. at 2123. Consistent with the Supreme Court's decision, the Fifth Circuit has upheld TDCJ-CID's authority to require male inmates to cut their hair regardless of their religious beliefs. *Diaz v. Collins*, 114 F.3d at 72-73. However, there does not appear to be a precise hair length enunciated in Fifth Circuit case law or in the TDCJ-CID regulations despite the fact that this case was remanded so that this court could determine how short Thompson was required to cut his hair. On the other hand, it is clear that inmates are to remain clean shaven unless they have a medical condition which is aggravated by shaving; in such cases they may only wear a quarter-inch beard. *Green v. Polunsky*, 229 F.3d 486, 488 (5th Cir.2000). The lack of a clearly defined standard may protect the defendants from damage claims under qualified immunity. *Simmons v. City of Paris, Tex.*, 378 F.3d 476, 479 (5th Cir. 2004), *citing Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2004). However, Thompson does not seek damages, only injunctive relief. Consequently, qualified immunity does not protect

the defendants in this proceeding. *See Williams v. Ballard*, 466 F.3d 330, 334 n.7 (5th Cir. 2006), *citing Orellana v. Kyle*, 65 F.3d 29, 33 (5th Cir. 1995).

Other courts have addressed prisoner hair length regulations and their impact on inmates' religions. The Court of Appeals for the Eighth Circuit upheld prison haircut regulations challenged by a Native American adherent. *Hamilton v. Schriro*, 74 F.3d 1545, 1551 (8th Cir. 1996). The Fourth Circuit reached the same conclusion when confronted by an appeal from a Rastafarian inmate. *Harris v. Chapman*, 97 F.3d 499 (11th Cir. 1996). In contrast, the Ninth Circuit found that the California Department of Corrections' had failed to show that the prohibition against hair longer than three inches was the least restrictive means to achieve the prison system's security needs with regard to prisoners in minimum security units. *Warsoldier v. Woodford*, 418 F.3d 989, 998-99 (9th Cir. 2005).

Two district courts have issued opinions dealing with prison grooming regulations which most closely reflect those submitted by the defendants in this action. *See Smith v. Ozmint*, 444 F.Supp.2d 502 (D.S.C. 2006); *Ragland v. Angelone*, 420 F.Supp.2d 507 (W.D.Va. Mar 14, 2006). The court in *Smith v. Ozmint* examined the South Carolina Department of Corrections grooming regulation which requires that all male inmates' hair be "neatly cut (not to exceed one inch in length) and must remain above the shirt collar and above the ear (not touching the ear). . ." *Id.* at 503. The magistrate found that the policy violated the plaintiff's sincerely held beliefs but also concluded that this harm would be outweighed by the harm to the defendants if the injunction were granted. *Id. citing Hines v. South Carolina Department of Corrections*, 148 F.3d 353, 358 (4th Cir. 1998). The court upheld the magistrate's recommendation noting that the risk to prison security and discipline more than offsets the restrictions placed on the plaintiff's individual religious practices.

*Id.* at 505, *citing Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) ("[I]t has long been recognized that, within the prison environment, courts grapple with yet another set of special considerations-those dictated by the needs and problems inherent in a penitentiary."). The court upheld the regulation and denied an injunction after finding that the defendants had shown that the policy had served a compelling state interest. *Id.* at 507. The court further found that the least restrictive means were used. *Id.* at 507-09. The court in *Ragland v. Angelone* dealt with a Virginia prison regulation which was modeled after the South Carolina policy and mandated that inmates keep their hair at no more than one inch in length and depth. *Ragland*, 420 F.Supp.2d at 510. Reaching the same conclusion as the one in *Smith v. Ozmint*, the Virginia court found that the policy furthered a compelling state interest and that the policy met the least restrictive means standard. *Id.* at 515-520.

This court agrees with the defendants in this action that TDCJ-CID's official grooming regulation is constitutional and follows the Fifth Circuit's decision in *Diaz v. Collins* in upholding the TDCJ-CID regulation, as further specified by Captain Jones's affidavit, and concludes that requiring inmates to keep their hair no longer than one inch is the least restrictive means in meeting a compelling state interest. *See also Thunderhorse v. Pierce*, 418 F.Supp.2d 875, 895 (E.D. Tex. 2006) (regulations governing hair length did not violate Native American inmate's free exercise rights), *citing Diaz*, 114 F.3d at 73. However, the issue is not whether TDCJ-CID officials can order Thompson to cut his hair; it is whether he has been required to keep his hair at no more than one-eighth of an inch long.

The defendants have submitted Captain Jones's affidavit indicating that Thompson has been allowed to maintain his hair in accordance with TDCJ-CID regulations with one-inch locks.

13

Thompson has responded with grievances indicating that he has been forced to cut his hair as short as one-eighth of an inch. Although the grievances are initiated by Thompson and contain statements which could be considered to be self-serving, the TDCJ-CID administrative responses contain no language which clearly refutes Thompson's assertion that he has been forced to cut his hair in excess of what is required by TDCJ-CID policy. *See* Docket Entry No. 51, Exhibit D, at 4 "Grievance Response." Moreover, Thompsons' grievances defeat the defendants' argument that Thompson has failed to exhaust his claim as required by 42 U.S.C. § 1997e. *See Westefer v. Snyder*, 422 F.3d 570 (7th Cir. 2005).

It has been established and accepted that in many instances that cutting a Native American's hair is an affront to his sincerely held religious beliefs. *See e.g. Iron Eyes v. Henry*, 907 F.2d 810, 811-13 (8th Cir. 1990) (prisoner had only cut his hair five times during his twenty-seven year lifetime, the first three were done as an act of mourning over the loss of a loved one). Most courts agree that prisons may establish a grooming standard which mandates haircuts despite the impositions that may be imposed on certain religions if the standard furthers a neutral government need. *Id.* at 814-15. However in a RLUIPA action, the state officials must show that the standards are the least restrictive means to further a compelling state interest. *See Cutter*, 125 S.Ct. at 2119. (2005). Based on the conflicting evidence and assertions, there is a fact issue as to whether Thompson has been forced to cut his hair shorter than required by valid regulations. This court cannot make a credibility finding at the summary judgment stage. *Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005).

The defendants have made no showing that the one-eighth inch haircut is necessary or that there are no easy alternatives as mandated by RLUIPA. The absence of such showing can be

explained by the defendants' position that Thompson has not been compelled to cut his hair as short as he has alleged. However, Thompson has disputed the defendants' evidence and this court finds it necessary that this action be brought to a hearing in order to resolve the issue for which it has been remanded. In order to expedite the proceedings, a bench trial may be scheduled as soon as is practicable if parties will waive their right to a jury trial. *See McAffee v. Martin*, 63 F.3d 436 (5th Cir. 1995); *Flowers v. Phelps*, 956 F.2d 488 (5th Cir.), *modified on other grounds*, 964 F.2d 400 (5th Cir. 1992).

## VI. Conclusion

The court **ORDERS** the following:

1.  The defendants' Motion for Summary Judgment (Docket Entry No. 48) is **DENIED**.

2.  The Clerk shall schedule this action for trial and send jury waivers to the parties.

**SIGNED** on this 27th day of March, 2007.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE